# Flannery's Will.

1. By our statute of wills of 1833, its provisions are not to apply to the disposition of *personal* estate by a testator whose domicil is out of the state.

2. Wills of *real estate* must be executed and proved according to the law of the place where the land lies.

3. A will containing a devise of the rest and residue of the testator's real estate, wherever situate, may be proved and registered in this state.

4. By our Act of 1832, relating to registers and registers' courts, so much of the *personal* estate of a decedent, whose domicil is not in Pennsylvania, as is actually in this state, shall be administered by executors or administrators constituted and qualified according to our laws; and to authorize such proceeding the probate of the will according to the law of the domicil is sufficient. Therefore, where the original will, made in this state, by one whose domicil at the time was in *California*, was offered for probate in Pennsylvania, it was necessary to show that it was executed according to the laws of California.

5. In the California statute of wills of 1850, it is enacted that "No will" (except nuncupative wills) "shall be valid unless it be in writing, and signed by the testator, or by some person in his presence and by his express direction, and attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."

*Held*, that the signing by the testator of *a mark* to his name, written by another, was a good execution of the will by one whose domicil was in California; his will being made in Pennsylvania, when ill, when on a visit, and where, soon after, he died.

APPEAL from the decree of the Register's Court of *Berks county*, affirming the decision of the register admitting to probate an instrument of writing purporting to be the will of Dennis Flannery, deceased.

The domicil of Dennis Flannery, the testator, at the time of making his will, appeared to be in. San Francisco, California, where he owned valuable real estate. During the latter part of 1853 he visited his uncle, Henry Flannery, in Berks county, Pennsylvania, and there died in about a week afterwards, viz., on the 28th or 29th December, 1853. On the 26th December, 1853, at his request a will was drawn, in which $1000 was devised to each of two step-brothers, and certain real estate in San Francisco was devised to his uncle, and also the residue of his real and personal estate. The uncle was appointed executor.

After the will was prepared, it was read to the testator by the

[Flannery's Will.]

person who drew it, who then left the room. Soon after he returned to the room with another person. The testator said the paper was his will, and his mark was then made to it. As to the mark, one of the said persons said, "I guided the pen while the deceased made the mark—he made the impression himself. I guided the pen—he held on the top of it—I bore on it to make the mark, and so made it. I wrote the name—I wrote it in the room—he did not request me to write it." The two persons referred to signed the will as witnesses in the presence of the testator. It did not appear that they were requested by him to do so. It was testified that the testator had learned to write. He died within two or three days after the will was executed.

The will was proved before the register of Berks county on the 7th January, 1854.

On 20th April, 1854, a petition was presented to the register, praying that a citation issue to show cause why the letters testamentary should not be revoked and the probate set aside. In the petition no specific objection to the will was alleged.

At a Register's Court held in August, 1854, JONES, President Judge, in his opinion, observed that a witness called to authenticate an instrument of writing need not be acquainted with its contents: 6 *Ser. & R.* 495; Harding *v.* Harding, 6 *Harris* 342; 2 *Starkie on Ev.* 918; 1 *Ves.* 11; 7 *Bingh.* 457; 6 *Id.* 310; 2 *Haywood* 234; 1 *W. & Ser.* 399.

He further observed that, if there were lands in Pennsylvania, the will was entitled to probate, if executed according to the law of Pennsylvania; and that the inquiry as to the existence of such land did not arise at that stage of the proceeding. He held that the execution *by a mark* was sufficient: 12 *Peters* 161. A mark is a good attestation by a subscribing witness: 8 *Ves.* 504; 17 *Id.* 454; also 7 *Halstead* 70; 1 *Louisiana* 37–46; *Id.* 112; 2 *Jurist* 775; 1 *Moo. & M.* 516. A number of the English cases were decided under the statute of frauds of 29 Charles 2, of the 5th section of which our Act of 1833 is nearly a copy. The law, as stated in Asay *v.* Hoover, 5 *Barr,* has been changed by the Act of 1848. He further observed that in the petition for the citation there should have been some specific objection assigned to the will: 1 *Parsons' Eq. Cases* 153. A mere marked allegation, not supported by evidence or disproved, was not sufficient to entitle a complainant to an issue. As to *the manner* in which the mark was made, reference was made to the case of Mason *v.* Harrison, 5 *Har. & J.* 480.

No issue was directed, but the decree of the register, in admitting the will to probate and granting letters testamentary thereon, was *affirmed.*

It was assigned for error: 1. The Court erred in holding that

two witnesses were not necessary to prove all the material facts to support the will. 2. In holding that the mark in this case was a sufficient signing under the California statute. 3. In holding that the will should be sustained under our Act of Assembly, because there was a clause of general devise of the residue of the testator's real estate, wherever situate. 4. In holding that *the mark* was a sufficient signing by the testator, notwithstanding it appeared that he could write. 5. It was submitted whether the register had jurisdiction to admit the will to probate.

In the California statute, which was printed in one of the paper-books, it is provided that " No will, except such nuncupative wills as are mentioned in this Act, shall be valid, unless it be in writing, and signed by the testator, or by some person in his presence, and by his express direction, and attested by two or more competent witnesses subscribing their names to the will in the presence of the testator :" *Cal. Statutes of* 1850, p. 177.

*Hughes*, with whom was *Wells*, for appellant.—A will of personal property is to be executed according to the law of the testator's domicil at the time of his death. If void by that law, it is absolutely void : 1 *Binney* 336 ; *Story's Con. of Laws*, § 465. As to real property the *lex loci* governs : *Id*. § 474.

By the California statute, as by the Pennsylvania statute of 1833, the will when not signed by the testator, is to be signed " by some person in his presence and by his express direction." The testator in this case had learned to write, and to render his will valid the directions of the statute should have been pursued. In this case, the name of the testator to the will was not written by his express direction. It was further contended that *a mark* to the name of the testator was not a sufficient execution : 10 *Watts* 153 ; 8 *W. & Ser.* 21, Cavett's Appeal ; 5 *Barr* 21, Asay *v.* Hoover ; *Id*. 441, Grabill *v.* Barr. The question is not whether the testator intended to execute the will properly, but whether it was legally executed : 3 *Harris* 480, Martindale *v.* Warner.

The California statute requires *two* witnesses. Attestation is defined to be the witnessing an instrument of writing at the request of the party making it, and subscribing it as a witness : *Bouvier Law Dic.* 139. The witnesses did not sign the will in question at the request of the testator.

3. There was no pretence that the testator owned real estate in Pennsylvania.

*McKenty* and *Strong*, for appellee.—In the Court below there was no specification of exceptions, as there should have been, as the Supreme Court on appeal should be limited to a revision of the questions made in the Court below : 7 *Harris* 439 ; 2 *Bin.* 168 ; also Rule of Court of 1852.

[Flannery's Will.]

As to the *first* assignment. The Court below did not hold that two witnesses were not necessary to prove all the material facts to support the will. The *execution* of the will was proved by two witnesses. Proof of *its having been read to the testator* is not required by the statute. A knowledge by the testator of its contents is only necessary to be shown when the will is impeached on the ground of *fraud.* But as that is not a statutory provision, a knowledge of its contents may be shown by a single witness: 6 *Ser. & R.* 495; 6 *Harris* 340; 3 *W. C. C. R.* 585; 5 *Watts* 486; 1 *Ves.* 6; 6 *Bing.* 310; 7 *Id.* 457; 2 *Haywood* 234.

2. Whether the testator, who had come to Berks county on a visit, and where he had before resided, intended to return to California, was not *certainly* established. But the will was legally executed either by the law of Pennsylvania or of California. Since the Act of 1848, a will by a citizen of Pennsylvania made in this state, may be executed by *a mark.* The decision in Asay *v.* Hoover, and other cases, differed from decisions made in England and in some of the states of the Union. A signature is defined to be "a sign, stamp, or mark impressed:" *Webster ;* also 12 *Peters* 161. The English statute requires that the will be *signed* by the testator. The making a mark by the devisor to a will of real estate is a sufficient signing (under the statute of frauds of 29 Car. 2, c. 2), *and it is not necessary to prove that he could not write his name at the time:* 3 *Nev. & Per.* 228. Also cited 8 *Adol. & Ellis* 94, Baker *v.* Denning; 8 *Vesey* 185, 504. Also 5 *Johnson* 144; 1 *Hill* 266; 9 *Louis.* 512; 11 *Id.* 251. It has not been questioned that *a deed* may be well executed by a mark, and this implies more deliberation than the execution of a will.

But though the Pennsylvania Act of 1833, and the California statute, require, where the testator does not sign his name, that it be signed by some one *in his presence, and by his express direction,* it is not to be implied that *a mark* is not a signature. The same provision exists in the British statute of 29 Charles 2d, ch. 3, § 5: *Roberts' Dig.* 305. Under that statute a *mark* has been held to be a signature: 8 *Ad. & Ellis* 94. The same expression is used in the South Carolina and Maryland statutes, and of other states. The California statute does not expressly require that the testator shall sign with *his name.*

The California statute requires attesting witnesses, but they are required by the British statute. A request by the testator to the witnesses to subscribe, is not necessary. It is sufficient if the witnesses saw the testator sign: 17 *Pick.* 379, Hall *v.* Hall; 1 *Metcalf* 352, Dewey *v.* Dewey. *Attestation* is defined to be sworn or supported by testimony or evidence.

That a signature effected by a testator by another person guiding the pen is sufficient, reference was made to 1 *Harr. & J.* 480;

4 *Wash. C. C. R.* 262; 3 *Ad. & Ellis* 658; 17 *Pick.* 373; 1 *Metcalf* 352. Signature of testator was effected by another person guiding his hand with his consent, and he afterwards acknowledged it. Held to be, in point of law, the act of the testator: 3 *Curt. Eccl. Rep.* 752.

In the 6th section of our Act of 15th March, 1832, it is enacted that in cases where the decedent has no residence at the time of his decease in this Commonwealth, letters testamentary. and of administration shall be granted by the register of the county "where the principal part of the goods and estate of the decedent shall be." If the residence of the testator was *in California*, his personal property with him was in Berks county, and the register had jurisdiction.

*Hughes*, in reply.—To authorize an execution by *a mark* it should appear that the testator was *unable* to write: Cavett's Appeal, 8 *W. & Ser.* 21.

(The suggestion was made that the inability to write might arise from debility.)

The opinion of the Court was delivered by

Lowrie, J.—Our statute of wills of 1833 declares, that its provisions shall not apply to the disposition of personal estate by a testator whose domicil is out of the state. Such also was the rule at common law, and it involves its contrary; that wills of real estate must be executed and proved according to the law of the place where the land lies: 1 *Binn.* 336. It follows, therefore, plainly enough, that a will which includes all of a man's real estate is entitled to be proved and registered in this state, according to our statute of wills, and irrespective of the testator's last domicil, at the instance of any one who desires to have it recorded as evidence of title to land; and, thus far, this proceeding is very plainly right.

But the register granted letters testamentary on this will, and thereby took jurisdiction of the personal estate of the testator, and this raises another question; for the allegation is that the testator was merely on a visit to this state at the time of his death here, and that his domicil was in California. We shall assume that this allegation is true; for there is evidence from which it might have been found: then how ought the will to be proved here in order to justify the granting of letters testamentary?

Our statute of 1832, relating to registers and registers' courts, requires that so much of the estate as is actually in this state shall be administered by executors or administrators constituted and qualified according to our laws, s. 6. It also makes the probate of the will according to the law of the domicil, sufficient evidence

[Flannery's Will.]

here, upon which to issue letters testamentary, without producing the original will or examining the witnesses, s. 12: of course this is not needed where the original will is produced for probate.

What then is the test of its validity? According to a well established rule of international law, sanctioned by our laws above referred to, it must be proved to have been executed in accordance with the laws of California.

It does not appear on the record that the California statute of wills was read in evidence; but it is given in our paper-books, and was used on the argument before the Register's Court and here, and we shall consider it.

It declares that no will (excepting nuncupative wills) "shall be valid unless it be in writing and signed by the testator or by some person in his presence and by his express direction, and attested by two or more competent witnesses subscribing their names to the will in the presence of the testator."

Under this statute we think that the signing of a mark by the testator to his name written by another is a good execution of the will. We have no California decisions to this effect; but the decisions of other Courts on their statutes of wills, which were cited at the bar, are entirely convincing. Our statute of wills may be sufficiently different to have called for a different construction. But if it were not so, we can hardly be expected to charge our peculiarities upon other people, and especially since they have been disowned in our legislature.

Decree affirmed at the appellant's costs and record remitted.